## STRAIN v. MARTIN.

### No. 2470.

Court of Civil Appeals of Texas. Eastland.

Sept. 29, 1944.

Rehearing Denied Oct. 27, 1944.

McMahon, Springer & Smart, of Abilene, for appellant.

M. F. Billingsley, of Munday, for appellee.

FUNDERBURK, Justice.

Ernest E. Martin, hereinafter referred to as Plaintiff, having brought this suit in Knox County against C. Hunter Strain, a resident of Tom Green County, hereinafter referred to as Defendant, to recover damages alleged to have resulted from the negligence of Lee Schaeffer, plaintiff filed a controverting plea tendering issues designed to sustain the venue on the ground that the suit was one based upon a trespass committed in Knox County.

Upon the hearing the Court overruled the plea of privilege, to revise which action

the Defendant has appealed. Defendant predicates his appeal upon only two points, namely, (1), the "failure of Appellee to prove that Schaeffer was the agent, servant or employee of Appellee, C. Hunter Strain," and (2), the "failure of Appellee to prove that Schaeffer, even if he was the agent, servant, or employee of Appellant, C. Hunter Strain, was at the time of the alleged collision acting within the scope of his authority."

By the words "failure of Appellee to prove," we understand is meant that there was no evidence to support a finding of such facts as issues of venue. The questions so presented are understood to be questions of "no evidence" in contradistinction to questions of "the sufficiency of the evidence," as the difference is explained in Hall Music Co. v. Robertson, 117 Tex. 261, 1 S.W.2d 857.

The briefs of the parties disclose no difference of opinion on the part of counsel that neither of the two issues of fact involved was supported by *direct* evidence. No witness testified either that Schaeffer was a servant of Appellant, or that if so, he was acting in the scope of his employment as such. The decision of the questions presented, therefore, involves a consideration of whether such absence of direct evidence to support such issues of fact was sufficiently supplied by legal equivalents thereof consisting of presumptions or inferences from such facts and circumstances as were shown by direct evidence.

■ The words *presumption* and *inference* are often used interchangeably as meaning the same thing. Perhaps all authorities agree that "A presumption of fact cannot rest upon a fact presumed, or, in other words, one presumption cannot be based upon another presumption * * *." 17 Tex.Jur. p. 247, sec. 57. Since the word *inference* is often used in the same sense as *presumption*, it is *in such sense* likewise true, of course, as expressed in the clause following the above quotation that "an inference of a fact" cannot be based "upon other inferences." Id. But there is a distinction between the meaning of the word *presumption* and the word *inference*. The nature of the distinction is shown from the following quotation from Corpus Juris Secundum: "The fundamental characteristic of a presumption, as distinguished from an inference, is that the former affects the duty of producing further testimony, not merely the weighing of that al-

ready produced. It has also been said that a presumption is a rule which the law makes upon a given state of facts, while an inference is a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proved." 31 C.J.S., Evidence, § 115. Some characteristics of a presumption as distinct from an inference were stated by Judge Smedley in Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 767, as follows: "It is settled in this state, and by the weight of authority elsewhere, that such a presumption is not evidence but rather a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence * * * is introduced. * * * It is not evidence and when met by rebutting proof it is not to be weighed by the jury or treated by the jury as evidence in arriving at a verdict." Of course a presumption in such distinctive sense when unrebutted may fully establish a fact in issue. In such case it does so, not as *evidence*, but as an artificial legal equivalent of the evidence otherwise necessary to do so. If, therefore, such presumption should be attempted to be used to support another presumption, the last presumed fact would not be supported by evidence. Would such a reason for the rule as to presumptions likewise apply to inferences in the distinctive sense of the latter? We do not think so. In such distinct sense, "an inference is a deduction which the reason of the jury [or trier of facts] makes from the facts proved." Joske v. Irvine, 91 Tex. 574, 584, 44 S.W. 1059, 1064. According to another authority, an inference is "a conclusion drawn by reason from premises established by proof." 31 C.J. 1181. An inference is "a deduction from facts proved." Id. Wintz v. Morrison, 17 Tex. 372, 383, 67 Am.Dec. 658. Under said definitions the proposition, it seems to us, is necessarily true that *a fact established alone by circumstantial evidence is a fact inferred,* not merely a fact presumed. Following the above quotation from Tex.Jur., it is further said that "the rule against the piling of one presumption upon another does not forbid the legal inferences and presumptions which may arise from a fact established alone by circumstances." Id. If, therefore, as we conclude, "a fact established by circumstances" is itself a fact *inferred* and "the rule against the piling of one presumption upon another does not forbid the legal inferences and presump-

tions which may arise from a fact established alone by circumstances," that is just another way of saying that a presumption or inference may be based upon an inference. And why not? Is not a legitimate inference from evidence the same as evidence within the requirement that a finding or verdict upon an issue must be supported by evidence? In Shifflet v. St. L. S. W. Ry. Co., 18 Tex.Civ.App. 57, 44 S.W. 918, 921, there was involved a question of whether there was circumstantial evidence to raise as issues of fact (1) whether defendant's train struck and killed two small children, and (2) whether defendant was negligent. The question was considered in express recognition of the rule "which forbids the deducing of one presumption from another." The Court said: "Appellee's counsel readily concede that in this instance it was the duty of the employe to use reasonable care and caution to discover persons on its track, and that failure to use such care would be negligence; but it is insisted by them that, as the operators of the locomotive testified that they kept an outlook, and used every reasonable degree of care and caution to discover persons upon the track, there was no evidence authorizing a different *inference*." (Italics ours.) The court answered this contention by detailing the evidence of circumstances warranting the jury in finding—necessarily by inference—the two issues in question. If the train did not strike the children, there was, of course, no actionable negligence, and, therefore, the court in holding as it did necessarily rested the inference of negligence upon the inference that the train struck the children. In Pink Front Bankrupt Store v. G. A. Mistrot & Co., 40 Tex.Civ.App. 375, 90 S.W. 75, 76, Chief Judge Gill said that the rule against piling presumptions upon presumptions "does not forbid the legal inferences and presumptions which may arise from a fact established alone by circumstances." This supports the proposition that the rule referred to does not forbid legal inferences from facts inferred from circumstances in evidence.

In Neely v. Provident Life, etc., Co., 322 Pa. 417, 185 A. 784, 789, the Supreme Court of Pennsylvania, aside from the reputation or standing of the court, by the very force of its reasoning seems to have demonstrated conclusively that inferences may rest upon other inferences. Said the court:

"With the distinction clearly in mind between *presumptions* and *inferences,* it is obvious that no *presumption* can be founded on a *presumption;* and it is equally obvious that *inferences* may be founded on *inferences,* as they are in the investigations carried on by scientific men and in the everyday affairs of life. As to the proposition that inferences cannot be based on inferences, Wigmore on Evidence (2d Ed.) vol. 1, § 41, says: *'There is no such rule; nor can be.* If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we *infer* that he discharged it; and from this we *infer* that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was the result of this design. In these and innumerable daily instances we build up *inference* upon *inference,* and yet no court ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon.' Dean William Trickett in an article published in The Forum of the Dickinson School of Law for March, 1906, vol. 10, p. 123, characterizes the postulate that, 'when facts are to be inferred from other facts the latter must be established by direct evidence' as 'error,' and suggests that as a doctrine occasionally recognized as a principle of proof it ought to be 'extirpated.'

"Both in the activities of laymen and in the administration of justice there are many examples of the permissible drawing of more than one inference from a primary established fact. When jurors in their deliberations arrive by a process of reasoning at an acceptable *inference of fact,* they have a right to add such fact to any previous facts found by them and proceed by ratiocination from such fact or facts to additional inferences of fact and then proceed still further by like process until they arrive at the ultimate conclusion on the issue trying." (Italics ours.)

It remains to make application of our conclusions as expressed to the facts of

the instant case, and happily in so doing we at the same time are enabled to give a good example as tending to afford support of such conclusions.

There was direct evidence of facts and circumstances, which the judge as a trier of facts was warranted in believing and drawing all reasonable inferences therefrom, to these several effects: That Defendant was engaged in highway surfacing or re-surfacing on a strip of highway extending four or five miles out of Knox City; that asphalt was being used in such work; that there was an asphalt mixing (or treating plant) on the north side of the highway but a short distance east of the place of collision; that three or four large commercial trucks were used in conveying asphalt being used in such highway work; that one of such trucks was the one which collided with Plaintiff's truck. That such truck bore the same license number as a truck of like description, the registration certificate to which was a short while before issued to the Defendant; that in the truck at the time of collision were duplicate tickets showing sales of oil or gas to Defendant; that the collision occurred in midday (1 or 2 o'clock P.M.) on a week day (July 27, 1943); that the truck which collided with Plaintiff's truck was being driven on its left side of the road, indicating to the driver of Plaintiff's truck that it was preparing to turn off to the asphalt plant.

There may have been more evidence of material facts or circumstances, but it is believed the foregoing is sufficient.

■ In our opinion, such evidence of facts and circumstances warranted an inference that the truck was owned by the Defendant. It was further inferable that since the truck belonged to Defendant and was being used in work of the Defendant, the driver was a servant of the Defendant. Since the driver was inferentially a servant of the Defendant, that fact, together with the direct evidence that the truck was one of those being used in Defendant's work, warranted the further inference that the driver was at the time in the course of his employment. The latter inference was further strengthened by the fact that it was about the middle of a weekday when it would be more probable that a truck of the kind shown would be employed in the business of Defendant than being used on any other mission.

It is, therefore, our conclusion that Appellant's points are not supported by the record, that no error is shown, and that the judgment of the court below should be affirmed. It is accordingly so ordered.

## On Rehearing

In the statement in the opinion that "the collision occurred in midday (1 or 2 o'clock P.M.) on a week day (July 27, 1943,)," we withdraw the part in parenthesis, namely, "1 or 2 o'clock P.M." The testimony of one witness was that he understood it was about noon, and of another that it was between 12 and 1 o'clock. This is not believed to affect the validity of our conclusions.