**K–MART CORPORATION, Appellant,**

v.

**Debra GREBE, Appellee.**

No. 13–89–261–CV.

Court of Appeals of Texas, Corpus Christi.

March 8, 1990.

Rehearing Overruled April 5, 1990.

William F. Seerden, Kemper Stephen Williams, III, Cullen, Carsner, Seerden & Cullen, Victoria, for appellant.

Don Weitinger, Ernest Cannon & Associates, Houston, for appellee.

Before BENAVIDES, UTTER and KENNEDY, JJ.

## OPINION

BENAVIDES, Justice.

Debra Grebe sued K–Mart Corporation for damages for injuries received when she allegedly tripped and fell in a K–Mart store in Bay City, Texas. Based on jury findings, the trial court entered a judgment awarding Grebe $84,118.67, which represents past medical expenses, pre-judgment interest, and actual damages, in addition to post-judgment interest and court costs. By four points of error, K–Mart complains that the trial court erred in allowing the testimony of a witness who was not timely designated, that the evidence in support of the finding on future medical damages is

legally and factually insufficient, and that its motion for new trial should have been granted. We reverse the judgment of the trial court and remand the cause to the trial court for a new trial.

Grebe fell in K–Mart on February 3, 1984. On the same day, K–Mart filled out a report of customer accident. This accident report indicated the cause of accident as Grebe's foot catching on a box, causing her to fall. The report also listed Susan Ryman as one of the witnesses to the accident.

Grebe filed suit against K–Mart on January 29, 1986. K–Mart propounded interrogatories to Grebe which she answered in April, 1986. In response to Interrogatory No. 7, which asked for the names and addresses of persons with knowledge of relevant facts, Grebe stated "Gary Fonville"; Fonville was the manager of this K–Mart at the time Grebe fell.

Depositions of K–Mart employees Gary Fonville, Karla Raymond, and Norma Ham were taken in August, 1986. During the depositions, the existence of the accident report was revealed as were the names of witnesses to the accident, including Susan Ryman.

Testimony from Raymond's deposition is in the trial record. During the deposition, she testified that "a summary of what Mrs. Ryman had to say about the accident" was "on the very back" of the accident report and that "the last page of the [accident report] ... is the resume of what Mrs. Ryman said...."

Two and a half years after the depositions, on the day of trial, February 21, 1989, Grebe amended her answers to interrogatories for the first time and added Ryman as a person with knowledge of relevant facts. Grebe proposed to call Ryman as a witness at trial, and K–Mart objected on the ground that Ryman was added after thirty days prior to trial in violation of Tex.R.Civ.P. 166b(5) (now 166b(6)). Grebe filed a motion asserting good cause to allow the testimony of Ryman.

Grebe's trial attorney testified at the good cause hearing that he personally had not become aware of Ryman as a possible witness in the case until February 13, 1989, when he read the depositions of Fonville, Raymond, and Ham in preparation for trial. Trial counsel further testified that he located Ryman the day before trial with the help of Grebe's husband. He explained that his knowledge of earlier attempts to locate Ryman was limited to what he had been told by the office staff in charge of handling the case: "that they attempted to find somebody by the name of Ryman in Matagorda County and there was scads and scads of them and their initial inquiries about Susan Ryman met with too many people."

Ryman also testified at the good cause hearing and stated that in 1984, a couple of months after the accident, a representative of K–Mart contacted her and took a statement from her over the telephone. She also testified that her testimony at trial would not be any different from that which was in her statement. When questioned about her residency in the Bay City area, Ryman stated that except for three months, she had lived in the area during the five years after the accident and that she had lived at her current residence for the past year. Ryman testified further that she had never talked to K–Mart's attorney.

■ By point of error number one, appellant complains that the trial court erred in allowing the testimony of a witness, Susan Ryman, whose identity was not designated within the time allowed by Tex.R. Civ.P. 166b(5) (now 166b(6)).

Rule 166b(6) states in pertinent part:

A party is under a duty seasonably to supplement his response if he obtains information upon the basis of which ... he knows that the response thought correct and complete when made is no longer true and complete and the circumstances are such that failure to amend the answer is in substance misleading....

A "seasonable supplementation" is made not less than thirty days before trial. *See* Tex.R.Civ.P. 166b(6).

A party who breaches the duty to supplement an interrogatory loses the opportunity to offer the testimony of a witness who is a subject of the interrogatory, unless the trial court finds sufficient good cause to require admission. *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 671 (1990); *Clark v. Trailways, Inc.*, 774 S.W.2d 644, 645–46 (Tex.1989); *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 (Tex.1989); *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 876 (Tex.App.—Corpus Christi 1988, writ denied); Tex.R.Civ.P. 215(5). The burden of showing good cause is on the party offering the evidence. *Sharp*, at 671; *Clark*, 774 S.W.2d at 646; *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.*, 701 S.W.2d 243, 246 (Tex.1985); *Ramos*, 750 S.W.2d at 877.

Determination of good cause is within the discretion of the trial court and can only be set aside if that discretion of the trial court is abused. *Clark*, 774 S.W.2d at 646; *Morrow v. H.E.B.* 714 S.W.2d 297, 298 (Tex.1986); *Ramos*, 750 S.W.2d at 877. In determining whether the trial court abused its discretion, we review whether the trial court acted without reference to the guiding rules and principles regarding a determination of good cause. *See Morrow*, 714 S.W.2d at 298.

A showing of good cause is two-part. First, a showing of good cause to permit testimony must encompass a showing of good cause for the offering party's failure to timely respond to proper discovery requests. *Clark*, 774 S.W.2d at 646; *Yeldell*, 701 S.W.2d at 246; *Ramos*, 750 S.W.2d at 877. When a witness's knowledge of relevant facts is first established through matters discovered and developed during trial, the failure to timely supplement answers to interrogatories is justified. *See Tinkle v. Henderson*, 777 S.W.2d 537, 540 (Tex.App.—Tyler 1989, no writ). Additionally, when a party supplements its answers immediately upon becoming aware that an individual is no longer a person with knowledge of relevant facts (e.g., no longer the custodian of records), then there is good cause for the late supplementation. *See Estate of Scott v. Victoria County*, 778 S.W.2d 585, 588 (Tex.App.—Corpus Christi 1989, no writ).

On the other hand, where a party is aware of the name of an individual and should have reason to believe that the person has knowledge of relevant facts, but does not contact that person until immediately before trial to determine whether they do have knowledge of relevant facts, there must be a showing of a good faith effort to locate the person or a showing of the party's inability to anticipate the use of the witness's testimony at trial in order to show good cause. *Clark*, 774 S.W.2d at 647; *see also Yeldell*, 701 S.W.2d at 246–47. The fact that a witness' identity is known to all parties is not itself good cause for failing to supplement discovery. *Sharp*, at 671.

Second, good cause must be established for allowing the testimony. *See Boothe*, 766 S.W.2d at 789; *E.F. Hutton & Co., Inc. v. Youngblood*, 741 S.W.2d 363, 364 (Tex.1987). When there exists an expectation regarding certain testimony from a particular type of source, for which the other party had ample time to prepare, there is good cause to allow the testimony. *See Estate of Scott*, 778 S.W.2d at 587–88 (claim that present record custodian, who was substituted for former custodian who was no longer an employee, was to testify to the same subjects as former employee constituted good cause); *cf. Boothe*, 766 S.W.2d at 789 (statement that denial of the use of certain testimony would cause great harm was not sufficient to show good cause); *E.F. Hutton & Co., Inc.*, 741 S.W.2d at 364 (assertion that defendant's attorney had sufficient special knowledge to cross-examine said expert witness was not good cause to allow expert to testify); *Morrow*, 714 S.W.2d at 298 (lack of surprise is not good cause). A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory. *Sharp*, at 671. Thus, even the facts that

a witness has been interviewed and both parties are aware of the contents of the interview, and the witness' testimony at trial will not vary from the interview, are not enough to show good cause for admitting the evidence when the witness was not identified in response to discovery. *Id.*

Grebe knew of the existence of Ryman and her possible knowledge of relevant facts approximately two and one half years before trial. This is evident from Grebe's possession of the accident report with Ryman's name on it and Grebe's possession of the information regarding Ryman's knowledge of the accident as indicated by the depositions of the K–Mart employees. Grebe argues that she had no duty to supplement her answers to interrogatories because she did not know whether Ryman actually had knowledge of relevant facts and that this could not have determined before Ryman was located. There was no showing that Grebe made any good faith effort to locate Ryman. The only effort described was terminated not by an inability to locate any Rymans, but because the number of Rymans made the search effort more difficult. Testimony was that Ryman was out of the immediate geographic area for only three months of the five years between the date of the accident and the date of the trial.

Additionally, because of Ryman's possible knowledge of relevant facts, Grebe should have anticipated the use of Ryman's testimony at trial. Grebe, therefore, should have supplemented her answers to interrogatories soon after the depositions at which she found out about Ryman, not more than two years later on the first day of trial. *See Clark,* 774 S.W.2d at 647.

Grebe claims that she had no duty to supplement her answer to Interrogatory No. 7. She argues that her original answer, which did not include Ryman, did not mislead K–Mart because K–Mart knew about Ryman from the day of the accident. We reject this argument. We cannot determine whether K–Mart's knowledge of what Ryman knew was any greater than Grebe's because although K–Mart did take a statement from Ryman, it was never admitted

into evidence, and we cannot review its contents. Our only indication of how much each party knew about Ryman comes from the depositions of the K–Mart employees, one of which implies that either Ryman's statement or a summary of it was discussed, indicating that both parties had the same information regarding Ryman's knowledge; both parties had the accident report more than two years before trial. Grebe's unsupplemented answer indicated to K–Mart that Ryman did not have knowledge of relevant facts and that she was not one of Grebe's possible witnesses at trial. Hence, K–Mart was given no warning that Ryman may be called as a witness and hence K–Mart was denied the opportunity to prepare a defense against her testimony.

Grebe did not show good cause for failing to supplement her answer to Interrogatory No. 7 nor did she show good cause to allow the testimony of Ryman; therefore, the trial court abused its discretion in allowing the testimony of Ryman.

Because we have determined that the trial court erred in admitting Ryman's testimony, we must now determine whether that error is reversible. *See Boothe,* 766 S.W.2d at 789; *Gee,* 765 S.W.2d at 396–97; *Ramos,* 750 S.W.2d at 877–78. For the error to be reversible, we must find that the error committed by the trial court was reasonably calculated to cause and probably did cause the rendition of an improper verdict. *Boothe,* 766 S.W.2d at 789; *Gee,* 765 S.W.2d at 396; *Ramos,* 750 S.W.2d at 877; Tex.R.App.P. 81(b)(1). Where the evidence is cumulative and not controlling on a material issue dispositive of the case, it will not ordinarily be reversible error. *Gee,* 765 S.W.2d at 396. However, where an individual is the only non-party witness to testify regarding a material issue and where the testimony directly corroborates one party, the error will be reversible. *See Boothe,* 766 S.W.2d at 789.

A material and central question presented in this case was whose negligence caused Grebe's fall. In answer to Question No. 1 of the jury charge, the jury determined that K–Mart's negligence alone

was the cause. In order for K–Mart to be negligent in this trip and fall lawsuit, Grebe had the burden of proving (1) that K–Mart had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to Grebe; (3) that K–Mart did not exercise reasonable care to reduce or to eliminate the risk; and (4) that K–Mart's failure to use such care proximately caused Grebe's personal injuries. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983); *H.E. Butt Grocery Company v. Godawa*, 763 S.W.2d 27, 29 (Tex.App.—Corpus Christi 1988, no writ); *see also Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 454–55 (Tex.1972); *H.E.B. Food Stores, Inc. v. Flores*, 661 S.W.2d 297, 299 (Tex. App.—Corpus Christi, 1983, writ dism'd). We must review the entire record to determine whether Ryman's testimony was controlling on any of these issues. *See Boothe*, 766 S.W.2d at 789; *Gee*, 765 S.W.2d at 396.

▮ Ryman testified that she was standing right by Grebe when she fell and that she saw Grebe trip and fall down. She also testified that after Grebe's fall, she saw a box sticking out of a stack of boxes displayed in the midway and that it was her impression that Grebe had tripped over a box. She admitted that she did not see the boxes prior to Grebe's fall. Ryman further testified that later, an employee of K–Mart came and straightened the boxes. Ryman was unable to describe what the boxes looked like. She explained that the accident site was located near the front door and that someone associated with K–Mart was set up in that area and taking photographs.

Grebe was vague in her own testimony regarding what caused her fall: at the time she fell, she reported the cause of her fall as tripping over a box; at trial, five years after her fall, she initially claimed that the cause of her fall was a wire which was caught in the bottom of the stack of boxes, but later, could not say exactly what caused her to fall. Grebe could not describe the boxes in the stack or the size and shape of the stack itself. Grebe also stated that she was not watching where she was stepping because she was watching some people who were standing in the store waiting to get their photographs taken and that she wanted to get by them without running into them.

Ryman was the only non-party witness to testify regarding the cause of Grebe's fall. Her testimony corroborated Grebe's testimony regarding the stack of boxes with one box sticking out of the stack and the fact that Grebe fell to the floor next to the display of boxes. She also corroborated that Grebe's fall apparently was caused by the stack of boxes or something associated with them. Because of the importance of Ryman's testimony to Grebe's case, its admission without a showing of good cause was reversible error. *See Boothe*, 766 S.W.2d at 789. Appellant's first point of error is sustained.

Because of our disposition of appellant's first point of error, we do not address appellant's remaining three points of error.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.

UTTER, J., not participating.